UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHEAST DIVISION

---

| | |
|---|---|
| Quality Bank, and<br>Quality Bankshares, Inc.,<br><br>        Plaintiffs,<br><br>vs.<br><br>BancInsure, Inc.,<br><br>        Defendant. | Civil No.: _____<br><br>**COMPLAINT** |

---

Plaintiffs, Quality Bank and Quality Bankshares, Inc., for their complaint against Defendant, BancInsure, Inc., ("BancInsure") states and alleges as follows:

## I. JURISDICTION

1. Plaintiff Quality Bank is a banking corporation authorized to conduct business in the State of North Dakota with offices in Barnes County and other North Dakota counties.

2. Plaintiff Quality Bankshares is a holding company for Quality Bank.

3. Defendant BancInsure is an insurance company with offices in Bismarck, North Dakota and has its principal office in Oklahoma City, Oklahoma. Defendant is in the business of selling insurance policies and/or financial institution bonds to banks.

4. This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1332.

## II. GENERAL ALLEGATIONS

5. Dan McLeod was formerly the President of Quality Bank.

6. Andrew Lehr was formerly the Vice President of Quality Bank.

7. In 2004 McLeod presented a plan to Quality Bank's board of directors in which Quality Bank generated revenue from consumer loan programs. McLeod proposed entering into

1

loans with consumers who purchased vehicles at various automobile dealerships in Fargo and West Fargo, North Dakota. The proposal was approved by Quality Bank.

8. Thereafter 20 loans were made by the end of June 2004. Those loans were not problematic.

9. However, McLeod needed to make more loans and quickly produce more revenue. McLeod unilaterally decided to relax the lending guidelines on the consumer loan program to quickly produce more revenue.

10. In September, 2004, McLeod moved Lehr from Plaintiff Quality Bank's Fingal, North Dakota, office to its West Fargo office so Lehr could make more loans under the consumer loan program.

11. Lehr initiated 598 loans 186 of those loans eventually went into default.

12. Many of the loans that Lehr and McLeod made were to people that were not creditworthy and, as a result, many of the borrowers could not repay the money they borrowed.

13. McLeod and Lehr nonetheless needed to make it appear as though the loans were performing and not in default.

14. McLeod knew that the consumer loan program that he created had little to no oversight, other than that which McLeod himself provided.

15. As such, McLeod and Lehr acted in concert to modify Plaintiff Quality Bank's computer system by making changes to the loan accounts, including changing loan payment dates.

16. Between 2000 and 2008, McLeod and Lehr made 7,288 changes to loan accounts. McLeod and Lehr made 2,852 changes to loan payment dates.

17. Lehr and McLeod acted in concert to prevent the Plaintiff's Board of Directors from discovering the number of late loan payments.

18. Near the end of 2007, Plaintiff Quality Bank employees approached McLeod and provided him with evidence that established that Lehr had been approving loans that should not have been approved and that Lehr had not followed proper lending procedures.

19. McLeod ignored the information that the employees provided to him.

20. After Plaintiff Quality Bank employees provided McLeod with the evidence that established that Lehr had been approving bad loans, McLeod continued to allow Lehr to make bad loans.

21. Lehr and McLeod continued to act in concert to make changes to loan accounts, including changes to loan payment dates. McLeod and Lehr's scheme involved failing to re-execute loan documents when changes were made to their accounts. Lehr further utilized Quality Bank's bad debt reserve account to make a $1,000.00 loan payment on a customer's account.

22. McLeod and Lehr's scheme caused Quality Bank to overstate the amount of income it made in its financial statements and understate the expenses it incurred in its financial statements.

23. McLeod and Lehr acted in concert to hide the bad loan information from people that needed to know.

24. Lehr also repossessed vehicles for Quality Bank but Quality Bank has no record of what happened to some of the vehicles after Lehr repossessed the vehicles.

25. McLeod and Lehr refused to recognize several million dollars in delinquent loans as non-accrual rather than on a cash basis, causing Quality Bank to recognize a profit where no profit existed.

26. Lehr and McLeod acted in concert to engage in other unacceptable banking practices which benefited Lehr and McLeod financially to the detriment of the Plaintiffs including but not limited to:

    a. Unauthorized changes of the maturity dates of loans in Quality Banks' computer system;

    b. Misappropriating/converting Quality Bank's collateral;

    c. Altering the face pages of loan documents;

    d. Misusing bank authority, including exceeding loan authorization, circumventing or violating general accepted lending practices, releasing collateral without appropriate authority and/or contrary to ordinary and prudent banking practices;

    e. Engaging in "kick-back" schemes with bank customers for personal benefit;

    f. Entering into loans with bank customers contrary to standard banking practices, banking guidelines, and/or contrary to banking authority; and

    g. Committing such other acts contrary to the rules and regulations established by Quality Bank and contrary to generally accepted banking practices, thereby benefiting Lehr and McLeod and causing harm and injury to Quality Bank.

27. The consumer loan program resulted in Quality Bank experiencing losses in the amount of $2,364,000.00.

## COUNT ONE
## BREACH OF CONTRACT

Plaintiffs reallege paragraphs 1-27 as fully set forth herein.

28. Plaintiffs paid for a Financial Institution Bond ("Bond") from Defendant.

29. The Bond provides coverage pursuant to its terms and conditions for various acts by Quality Bank employees.

30. The Bond contains a clause covering computer systems fraud.

31. Under the computer systems fraud clause, BancInsure agreed to indemnify Plaintiffs for:

> **(H)   COMPUTER SYSTEMS FRAUD**
>
> Loss resulting directly from a fraudulent
>
> > (1)   entry of electronic data or Computer Program into, or
> > (2)   change of Electronic Data or Computer Program within
>
> any Computer System operated by the Insured, whether owned or leased, or any Computer System identified in the application for this Bond, or a Computer System first used by the Insured during the Bond Period, provided the entry or changes causes
>
> > (1)   property to be transferred, paid or delivered,
> > (2)   an account of the Insured or of its customer to be added, deleted, debited or credited, or
> > (3)   an unauthorized account or a fictitious account to be debited or credited.
>
> In this Insuring Agreement (H), fraudulent entry or change shall include such entry or change made by an employee of the Insured acting in good faith
>
> > (1)   on an instruction from a software contractor who has a written agreement with the Insured to design,

                        implement or service programs for a Computer System covered by this Insuring Agreement (H), or

      (2)     on an instruction transmitted by Tested telex or similar means of Tested communication identified in the application for this Bond purportedly sent by a customer, financial institution, or automated clearing house.

32. Lehr and McLeod went into Quality Bank's computer system and fraudulently made 2,852 changes to loan payment dates, which caused customer's accounts to be added, deleted, debited or credited.

33. The change in loan payment dates caused at least a $2,364,000.00 loss to Quality Bank.

34. BancInsure has breached its contract with Plaintiffs by failing to indemnify Plaintiffs for the loss Quality Bank sustained as a result Lehr and McLeod's actions, pursuant to the computer systems fraud provision in the insurance bond.

35. The bond also provides coverage for forgery or alteration.

36. Under the forgery or alteration clause, BancInsure agreed to indemnify Plaintiffs for:

      **(D)    FORGERY OR ALTERATION**

      Forgery or alteration of, on, or in any negotiable instrument (except an evidence of debt). . . .

37. Lehr and McLeod forged or altered negotiable instruments when they fraudulently made 2,852 changes to loan payment dates

38. BancInsure has breached its contract with Plaintiffs by failing to indemnify Quality Bank for the loss it sustained as a result of Lehr and McLeod's actions, pursuant to the forgery or alteration provision.

39. The bond also provides coverage **(B) ON PREMISES** for loss of property resulting from robbery, burglary, misplacement, or mysterious unexplainable disappearance of property.

40. Lehr repossessed vehicles, but Quality Bank has no record of what happened to several of the vehicles after Lehr repossessed the vehicles, which has caused a loss to Quality Bank.

41. BancInsure has breached its contract with Plaintiffs by failing to indemnify Quality Bank for the loss it sustained as a result of Lehr's actions, pursuant to the on premises provision.

42. Finally, the bond provides coverage for employee dishonesty.

43. Under the **(A) DISHONESTY** provision, BancInsure agreed to indemnify Plaintiffs for losses resulting from dishonest or fraudulent acts when that loss results directly or indirectly from Loans, provided the employee was in collusion with one or more parties to the transactions and received an improper financial benefit.

44. Lehr and McLeod acted in concert and in collusion to change loan maturity dates, causing a loss in excess of $2,364,000.00 to Quality Bank.

45. Lehr and McLeod received an improper financial benefit, as they engaged in "kick-back" schemes with bank customers for personal benefit.

46. BancInsure has breached its contract with Plaintiffs by failing to indemnify Quality Bank for the loss it sustained as a result of Lehr and McLeod's actions, pursuant to the employee dishonesty provision.

## COUNT TWO
## BREACH OF WARRANTIES AND REPRESENTATIONS

Plaintiffs reallege paragraphs 1-46 as fully set forth herein.

47. BancInsure warranted and represented that it would indemnify Quality Bank for any losses under provisions **(A)**, **(B)**, **(D)**, and **(H)**.

48. BancInsure has breached its warranties and representations to Quality Bank by failing to indemnify Quality Bank for Quality Bank's losses under provisions **(A)**, **(B)**, **(D)**, and **(H)**.

49. BankInsure's breaches have proximately caused damages to Plaintiffs.

## COUNT THREE
## NEGLIGENT MISREPRESENTATION

Plaintiffs reallege paragraphs 1-49 as fully set forth herein.

50. Under the Bond and in the course of BancInsure's business, BancInsure provided Plaintiffs with the Bond in which BancInsure agreed to indemnify Plaintiffs for any losses sustained under provisions **(A)**, **(B)**, **(D)**, and **(H)**.

51. BancInsure has not indemnified Plaintiffs under provisions **(A)**, **(B)**, **(D)**, and **(H)**, and therefore information contained in provisions **(A)**, **(B)**, **(D)**, and **(H)** is false.

52. BancInsure failed to use reasonable care or competence in representing that it would indemnify Quality Bank for losses sustained under provisions **(A)**, **(B)**, **(D)**, and **(H)** or BancInsure negligently misrepresented to Plaintiffs that it would indemnify Plaintiffs for losses sustained under provisions **(A)**, **(B)**, **(D)**, and **(H)** in order to induce Quality Bank's reliance on BancInsure's representation.

53. Plaintiffs justifiably relied on the promises contained in provisions **(A)**, **(B)**, **(D)**, and **(H)**.

54. As a result of Plaintiffs justifiable reliance on BancInsure's representations, Plaintiffs has suffered losses in excess of $2,364,000.00.

## COUNT FOUR
## BAD FAITH

Plaintiffs reallege paragraphs 1-54 as fully set forth herein.

55. BancInsure breached its contract with Plaintiffs in failing to indemnify it under provisions **(A)**, **(B)**, **(D)**, and **(H)** of the bond for losses in excess of $2,364,000.00 that Quality Bank sustained.

56. BancInsure has refused to pay Plaintiffs claim.

57. There is no reasonably legitimate reason for BancInsure's failure to pay Quality Bank's claim, or BancInsure intentionally failed to pay Quality Bank's claim.

58. BancInsure has actual knowledge that it does not have a legitimate or arguable reason for failing to pay Quality Bank's claim, or BancInsure intentionally failed to determine whether there was a legitimate reason to deny Quality Bank's claim.

59. BancInsure's failure to indemnify is in bad faith.

60. BancInsure's actions have damaged Plaintiffs.

## COUNT V
## DECLARATORY JUDGMENT

Plaintiffs reallege paragraphs 1-60 as fully set forth herein.

61. Plaintiffs have previously demanded that BancInsure indemnify it for the losses referenced in this Complaint.

62. Plaintiff's losses have been further made aware to BancInsure as it has filed a separate action against Andrew Lehr and Dan McLeod in the Cass Country District Court in North Dakota.

63. An actual controversy has arisen between the parties regarding BancInsure's obligations under the bond and whether the bond provides coverage for the damages alleged herein.

64. Coverage exists under the bond because the bond includes coverage under provisions **(A)**, **(B)**, **(D)**, and **(H)**.

65. Because there is coverage under the bond, BancInsure must indemnify Plaintiffs for the losses it sustained under provisions **(A)**, **(B)**, **(D)**, and **(H)**.

**WHEREFORE**, Plaintiffs pray for judgment against BancInsure as follows:

1. Awarding damages in an amount greater than $75,000.00, the exact amount to be proven at trial;

2. Awarding Plaintiffs its costs, disbursements and attorney's fees as allowed by law;

3. Declaring the rights and obligations of each of the parties regarding the dispute;

4. Declaring there is coverage under the Bond in connection with Quality Bank's claims;

5. Declaring BancInsure has an obligation to indemnify Quality Bank for the losses Plaintiffs have sustained;

6. Authorizing Quality Bank, upon completion of discovery, to amend its complaint to allege further causes of action; and

5. For such other and further relief as this Court deems just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Dated this ___ day of September, 2010.

_____
Brad A. Sinclair (#04225)
Joseph Wetch, Jr. (#05788)
SERKLAND LAW FIRM
10 Roberts Street
P.O. Box 6017
Fargo, ND 58108-6017
(701) 232-8957
*Attorneys for Plaintiffs*